# EXHIBIT K

Larry A. Smith
950 Beaumont Avenue, #3210
Beaumont, CA 92223-3210
951-769-4423


Milodragovich, Dale & Steinbrenner, P.C.


Client: Tamara Downen


December 16, 2013


Prepared by

# Larry A. Smith

## My Expertise:

I spent 30 years working in law enforcement and approximately 15 of those years I did instruction for San Bernardino County Sheriff's (CA) Academy and San Bernardino Valley Community College in the City of Colton, California. During my 30+ Law Enforcement career, I spent approximately 10 years on the Special Weapons And Tactics (SWAT) team. I designed training for the SWAT Team during this time using scenario based training.

I was selected by my agency, the Fontana Police Department (CA), to represent them as a Guest Tactical Officer at San Bernardino County Sheriff's Office (CA) Academy and served in that position approximately 9 months. I returned to Fontana Police Department (CA) and became a Field Training Officer for that Department. I trained Reserve Police Officers and Police Explorer Scouts. I was promoted to Sergeant and was in charge of the Field Training Officers programs. In this position, I was responsible for issuing new equipment to employees as well as writing policy and procedures. I was subsequently shot in the line of duty and retired.

I was hired at San Bernardino County Sheriff's Office (CA) Academy as a **Training Specialist.** In this position I was part of a team that taught approximately 4000 personnel every quarter in Firearms, Legal Updates, Verbal Judo, Weaponless Defense, Chemical Agents, Baton, Handcuffing and restraints for combative individuals.

In 1995, I was employed at San Bernardino County (CA) Special Investigations Unit, working Welfare Fraud. My secondary duty was teaching the same above disciplines to the other Fraud Investigators, becoming in sense, the defacto Training Officer for the 30 + Investigators for that Unit.

**I was certified by Taser International as an Instructor in 2008.**

See the attached Curriculum Vitae for further information.

## Assignment:

I was retained by Milodragovich, Dale & Steinbrenner, P.C. as an expert witness on the use of Tasers.

I was asked to review the discovery and determine if in my opinion the Columbia Falls Police Department was trained properly in the use of ECD equipment (known from here on out as the Taser) and whether the Taser deployment against Mr. Downen was appropriate.

## MATERIALS REVIEWED

I have reviewed the following materials:

- Complaint and Demand for Jury Trial dated April 3, 2013;
- First Amended Complaint and Demand for Jury Trial dated April 18, 2013;
- Defendant Columbia Falls Police Department's Answer to First Amended Complaint dated May 28, 2013;
- Defendant Montana Veterans Home's Answer to First Amended Complaint dated June 11, 2013;
- Second Amended Complaint and Demand for Jury Trial dated June 18, 2013;
- Defendant Columbia Falls Police Department, City of Columbia Falls, Mike Johnson, and David G. Perry's Answer to Second Amended Complaint dated July 1, 2013;
- Defendant Montana Veterans Home and State of Montana Department of Health & Human Services' Answer to Second Amended Complaint dated July 17, 2013;
- Plaintiff's Initial Disclosure dated July 16, 2013;
- Initial Disclosure of Defendant, Columbia Falls Police Department dated July 25, 2013;
- Initial Disclosure of Defendant, Montana Veterans Home and State of Montana Department of Health & Human Services dated June 11, 2013;
- Plaintiff's Preliminary Pretrial Statement dated September 24, 2013;
- Defendant Columbia Falls Police Department, City of Columbia Falls, Mike Johnson, and David G. Perry's Preliminary Pretrial Statement dated September 23, 2013;
- Defendant, Montana Veterans Home and State of Montana Department of Health & Human Services' Preliminary Pretrial Statement dated September 24, 2013;
- Plaintiff's Responses to Defendant, Columbia Falls Police Department's First

Interrogatories dated July 12, 2013;

- Plaintiff's Responses to Defendant, Columbia Falls Police Department's First Request for Production dated July 12, 2013;
- Plaintiff's Responses to Defendant, Montana Veterans' Home's First Discovery Requests dated July 12, 2013;
- Joint Responses of Columbia Falls Police Department and City of Columbia Falls to Plaintiff's First Combined Discovery Requests dated August 16, 2013;
- Plaintiff's Third Amended Complaint and Demand for Jury Trial dated October 25, 2013;
- City of Columbia Falls, Mike Johnson, and David G. Perry's Answer to Third Amended Complaint dated November 7, 2013;
- Defendant, Montana Veterans' Home and DPHHS' Answer to Third Amended Compliant dated November 12, 2013;
- Plaintiff's First Supplemental Responses to Defendant, Columbia Falls Police Department's First Request for Production dated November 5, 2013;
- Plaintiff's First Supplemental Responses to Defendant, Montana Veterans' Home's First Discovery Requests dated November 5, 2013;
- City of Columbia Falls' First Supplemental Responses to Plaintiff's First Combined Discovery Requests dated October 21, 2013 (includes 2 videos on CD);
- Deposition Transcript for Tamara Downen;
- Copy of Police Report (799-817);
- Deposition Transcript of Officer Mike Johnson, along with video (taken on 11/25/13); and
- Deposition Transcript of Chief David Perry, along with video (taken on 11/25/13);
- Deposition of Officer Gary Stanberry;
- Taser International Training Manual Version 14;
- IACP Model Policy Electronic control weapons (Tasers);
- IACP paper on Electronic Control Weapons(Tasers)


## Synopsis:

Mr. Downen was placed at the Veteran's Home, because he was suffering from advanced dementia. His family's had financial hardships and subsequently chose The

Veterans' Home for his living arrangements. Mr. Downen qualified for this because he was a U.S. Veteran.

Mr. Downen was admitted to the Veterans' Home on 5/31/12. On 6/1/12, Mr. Downen became agitated and according to staff jumped up out of his chair and started pacing. A staff member attempted to give Mr. Downen some oral medicine; however, he pushed her away and refused to take the medicine. Mr. Downen continued to pace around and went outside. Mr. Downen picked up a rock in each hand. The Staff decided to call 911 to report the incident.

Columbia Falls Police Officers Johnson and Stanberry arrived on scene. Almost immediately after exiting his police vehicle, Officer Johnson drew his department issued Taser. He instructed Mr. Downen to drop the rocks. Mr. Downen refused, and Officer Johnson alleges that Downen then raised one of the rocks as if to throw it at Officer Johnson.

Officer Johnson then deployed his Taser in Probe mode, striking Mr. Downen. Mr. Downen was struck by both probes, one in his left arm and one in his left buttock, and fell to the ground. Mr. Downen was handcuffed and given first aid until Paramedics arrived. Mr. Downen was then transported to a local hospital. Mr. Downen died approximately three weeks later.

Columbia Falls Police Department failed to have a Taser Policy in place when this incident occurred. The department issued Tasers in 2006 and never developed any policy or procedures for this weapon.

Deposition testimony suggests that the Columbia Falls Police Department did some Taser Training in 2006; however, there are no official records of this training. If there are any records of this training, they were not provided in this case's discovery. The Columbia Falls Police Department did provide Taser Training *after* this incident, sometime between July and August 2012.

## Taser Background

A Taser is considered non-lethal, intermediate level force. A Taser, when fired in dart mode, ejects two dart-like electrodes connected to the Taser gun by conductive wire, and propels the dart-probes into the target with compressed nitrogen. A Taser causes Neuromuscular Incapacitation (NMI), which overrides the sensory and motor functions

of the nervous system, locking up the muscles and causing the Tased person to fall. For the X26 model, the NMI effect continues in 10 second intervals each time the trigger is pressed, delivering 5,000 volts or an average current of 0.0036 Amps. The NMI effect subjects the Tased person to secondary injuries from that fall, especially if they are Tased on a hard surface.

## Opinions:

After reviewing the entire discovery and reviewing Taser International Training Manual Version 14, I have the following opinions, rendered to a reasonable degree of certainty and based on my knowledge, skill, training and expertise in law enforcement and Taser training and use,:

**It is my opinion that the Columbia Falls Police Department did not follow accepted Police Practices by failing to properly train its officers in the use of Tasers. The facts in this case establish that the Columbia Falls Police Department failed to properly train its officers on the Taser.**

### Grounds for opinion:

It is my opinion that the Columbia Falls Police Department failed to follow accepted police practices by neglecting to properly train its officers in the use of Tasers. This opinion is based on the troubling lack of any records for the trainings, and the admissions of Chief Perry and Officer Johnson.

- **Absence of Training Records**

Certified instructors will run Taser Training class in a particular order. This is explained in the Instructor Manual from Taser International. The first order of business is the paperwork. The participants have to fill out the following paper work first:
- Releases of Liability for Taser International
- Class Roster of each person in attendance
- Sign a copy of Taser International Warnings
- Certificate of Completion of Taser class

All officers certified as users by Taser International are required to have signed the warning and releaser of liability forms, and will have been provided with certification

documents to file at their agency. It is standard practice for the agency to keep copies of class roster, waivers, and certifications of completion. The personnel who attended would normally be given a copy of the completion certificate for their own personal records.

The Columbia Falls Police Department advised they do not have any of these documents, nor did they supply them in the discovery. This makes me highly suspicious of whether any Taser Certified training actually took place. To date we have still been unable to discover an actual date or any documentation for this 2006 training.

I also question whether the two instructors who conducted this training were certified to conduct Taser classes for Taser International. Two questions immediately come to mind here. When were they certified? If the Chief of Police didn't have Taser Training by Taser International, then how did these two identified Officers get certified to be Taser Instructors?

Training records are probably the most important records a Police Department has the responsibility for keeping. If a department fails to keep these records, it can cause major liability for the officers, the department and agency. I was a Police Trainer for 15 years of my career, and know firsthand the importance of these records. Not only do the police departments normally retain these records, but the employees generally retain their own training file that they keep during their career.

I find it astonishing that the officers involved in this case have numerous certificates for a substantial amount of training in their personnel file, yet no Taser certificates of completion. This is not only the Department's failure, but the failure of each individual Officer.

The lack of training records regarding officers' Taser Certification itself violates standard police practices. However, it is also indicative of the fact that whatever training occurred in 2006 was not Taser Certified training. This also violates standard police practices. Taser Certified training is crucial for exactly the reasons implicated by Officer Johnson's inappropriate Taser use.

Taser Certified training provides departments with crucial background information and warnings, through official training materials and releases that officers must sign. These warnings specifically caution against Taser use on elderly and infirm individuals, and warn of the fall risks associated with being tasered. These are warnings that Officer Johnson would have benefited from.

The Columbia Falls Police Department departed from accepted police practices by failing to maintain proper Taser certifications and records. Perhaps this is not surprising, though, considering that this same department allows its officers to work with expired First Aid and CPR certifications (Johnson's Depo. at p.36).

- **Admissions of Chief Perry and Officer Johnson**

Chief Perry stated in his deposition that the first Taser Training was in 2006, when his department was issued its Tasers, but he could not pinpoint the actual date this occurred. Chief Perry then testified that after the 2006 training, Officer Stanberry and Officer Johnson did not receive any further Taser training until after the incident with Stanley Downen in 2012.

Taser International certifies its Instructors for two-year periods, with re-certifications valid for three years. However, Taser International recommends that end users, persons such as Officer Johnson, re-certify **annually**. This annual recertification involves firing at least two live cartridges and reviewing the Taser annual user update, product warnings and current training bulletins. Furthermore, in a paper authored to accompany the model policy for Electronic Control Weapons, the International Association for Chiefs of Police (IACP) warns that:

> **Failure to provide professionally accepted training exposes the officer, agency, and the public to an increased potential for negative outcomes.** The training provided should, at a minimum, be **consistent with the manufacturer's recommendations** and agency policy . . . Agency policy should allow the opportunity for volunteers within the department to experience being exposed to the device, but such exposure should generally not be mandated. Following the above outlined training, a written examination should be administered to test the officer's knowledge of these, as well as a practical examination of the technical aspects of the safe and effective physical handling of the ECW. **In addition to the basic training program, officers should be recertified on an annual basis, consistent with the manufacturers' recommendations and addressing those points outlined in the initial training.**

Officer Johnson testified in his deposition that after his initial training in 2006, he did not review any Taser literature until the department implemented a Taser policy after the Downen incident. He did not review the Taser manual or any Taser warnings. In fact, Officer Johnson stated that he was not aware of any warnings that existed regarding the use of a Taser on the elderly, infirm, or persons who are at risk for falls.

Far from re-certifying annually, Officer Johnson and likely the rest of the Columbia Falls

Police Department's officers, did not have *any* training or refresher for over six years. This represents a gross departure from standard and accepted police practices.

Once again, this failure to properly train officers in Taser use in accordance with accepted law enforcement practices is perhaps not surprising in light of Chief Perry's apathy toward his own training. Chief Perry, who is in charge of developing and implementing department policies, including weapons policies and use of force policies, was never Taser certified and did not attend a single Taser training until after the Downen incident in 2012. He stated in his deposition that he attended a Taser *demonstration* in 2006, but not the Taser training that occurred when the Tasers were issued to his officers. The fact that the department's Chief was untrained on weapons he had a responsibility to make policies for is a clear departure from accepted police practices, and I believe this apathy toward training starts with the Chief of Police and runs rampant throughout the department.

**It is my opinion that the Columbia Falls Police Department did not follow accepted police practices when it failed to implement policies and procedures for the use of Taser.**

**GROUNDS FOR OPINION:**

It is my opinion that the Columbia Falls Police Department failed to follow accepted police practices by neglecting to implement policies and procedures regarding Taser use. This opinion is based on the complete absence of any mention of "Tasers" in any of the Department's policies and procedures, despite the existence of widely available model policies.

According to Chief Perry's deposition, the Columbia Falls Police Department Policy & Procedure Manual was first implemented in 1997 or 1998. The facts indicate that Columbia Falls Police Department issued Tasers to personnel sometime in 2006, but there was no revision to the Policy & Procedure Manual to provide for Taser use. The manual was updated again in 2008, two years after Tasers were issued to officers, but no Taser provision was included. Though the Tasers were issued in 2006, the department did not have a Taser-specific policy in effect until July 2012, *after* Mr. Downen was tasered. **This was irresponsible and careless, and a gross departure from accepted police practices.**

Law enforcement is a constantly changing profession. The policy and procedures should be reviewed and modified or changed as necessary. It is the Chief of Police's responsibility to review and change this Policy Manual on a regular basis. In the 30 years I worked law enforcement, I saw policy changes constantly. We normally received some at the start of the year. It was the Chief of Police's responsibility to have these changes adopted into policy and procedure is to then give those changes to the personnel. The personnel would have to sign for the changes, acknowledging that they read and received those changes, making them personally responsible for the changes. The standard operating procedure for most law enforcement agencies is to have the policy and procedures in place <u>before</u> issuing out the equipment.

When a department purchases Tasers from Taser International, the company immediately offers to put on a class for the department. They offer to train individuals as Certified Taser Instructors, so the department can train others whenever they need. They also handle the re-certification on a regular basis. It appears the Columbia Falls Police Department failed to take advantage of this training and documentation.

The Taser Instructor Handbook contains compact discs with a sample policy and procedures. These are commonly used by agencies to establish their own policies and procedures. It is as simple as putting the compact disc into the computer, opening the policy, and putting the agency name at the top. The IACP also provides a model policy.

Model policies were readily available, and Chief Perry even testified in his deposition that he was familiar with and used IACP model policies. However, at the time Mr. Downen was tasered in 2012, the Columbia Falls Police Department had a weapons policy that covered, amongst others, Baton, Impact Weapons and Chemical Agents, but not Tasers. In fact, at the time Mr. Downen was tasered, not a single Columbia Falls Police Department policy or procedure manual contained the word "Taser" or "Electronic Control Weapon."

The job requirements for the Columbia Falls Police Department Chief of Police states that the Chief "Competently interprets, develops, and implements polices." This is consistent with the duties and responsibilities of all Police Chiefs. However, **Chief Perry failed to issue any Taser policy or procedure for 6 years after his officers were issued Tasers. This was irresponsible and careless, and a clear departure from accepted police practices.** The failure to properly and timely supplement policies to provide guidance to officers on the use of force with a Taser shows a lack of leadership by Chief Perry.

**It is my opinion that Officer Johnson failed to follow accepted police practices when he tasered an elderly and infirm man.**

**GROUNDS FOR OPINION:**

It is my opinion that Officer Johnson failed to follow accepted police practices when he tasered an elderly and infirm man. I do not believe a Taser was necessary to resolve this particular incident. First, Mr. Downen did not pose any real threat. He was a 77 year old man with Alzheimer's, while Officer Johnson was a 230 pound athletic man with a weapons belt. The use of a Taser against Mr. Downen was not justified.

Second, a number of foundational police materials, including those from Taser International and the IACP, specifically warn against Tasing elderly and infirm persons such as Mr. Downen. Had Officer Johnson been properly trained in the use of Taser weapons, he would have known this. Again, the use of force Officer Johnson employed against Mr. Downen by tasering him simply was not justified.

- **Mr. Downen Did Not Pose A Threat**

Stanley Downen simply did not pose a credible threat. Mr. Downen was 77 years old and suffering from dementia. Officer Stanberry recorded in his report that he believed Mr. Downen to be about 85 years old. In the photographs I have seen of Mr. Downen, he in fact looks elderly and I do not see much muscle mass. It has been my experience that people suffering from Alzheimer's move very slowly, in fact, most look feeble. This becomes especially true when they are in the advanced stages of the disease.

Officer Johnson, on the other hand, appears to be in great shape and very muscular. He testified that he weighed 230 pounds at the time. I have not seen any photos of Officer Stanberry, but I understand from deposition testimony he is about the same size as Johnson. It is telling that Officer Stanberry did not draw or use his own Taser.

The record shows in numerous places, including via Officer Johnson's deposition, that Mr. Downen was struck in the back of his arm and buttocks with the Taser probes. These probe entry points are consistent having been Tased from behind. How big of a threat could Mr. Downen have been if he was turning from the officer to head back toward the facility? Furthermore, eyewitness accounts contradict the officers' statements that Mr. Downen seemed poised to through a rock, and instead indicate Mr. Downen did not raise his arms at all.

It appears as though the Veterans' Home had approximately 5 personnel out in front

when the officers arrived. It appears that there was very little communication between the Officers and the Staff. I do not believe the Staff ever notified the Officers that they had given Mr. Downen a shot of Haldol. There also appears to have been no communication between the two officers enroute to the call or after they arrived. Communication between Officers is **crucial** on handling calls of this nature. If Officer Johnson would have engaged in proper communication with Officer Stanberry and with the nursing staff, he would have realized very quickly this was not the type of situation in which Taser use would be necessary.

If Officer Johnson did fear for his safety, then the Taser should not have been the weapon he used, there were other tools he could have considered. He should have backed up and tried to talk Mr. Downen out of his agitation. If Officer Johnson truly felt the need to utilize a weapon, he should have used a chemical agent such as OC Spray (commonly known as Pepper Spray). It still keeps the officer away from the suspect, yet is less intrusive than the Taser and does not pose the same risk from falling.

Officer Johnson had been issued OC Spray, but testified that he did not have it on him at the time he Tased Mr. Downen. OC Spray would have allowed the Officers to move in and secure Mr. Downen without him falling to the pavement. However, it is common amongst law enforcement throughout the nation to opt not to use OC Spray because the officer will undoubtedly experience some contamination upon moving in to handcuff or detain.

Ultimately, Tasing an elderly man who poses no real threat constitutes an unjustifiably excessive use of force that falls far outside of standard and accepted police practices.

- **Ample Warnings Exist Cautioning Against Taser Use On Persons Such As Mr. Downen**

Taser Instructor Certification Lesson Plans establish that ECD use has not been scientifically tested on the infirm or the elderly, and warns that "ECD use on these individuals could increase the risk of death or serious injury". The IACP Model Policy for Electronic Control Weapons ("ECW") clearly state that ECW's are not to be deployed in situations where "the officer has a reasonable belief that the subject might fall resulting in death or serious physical injury, and the circumstances presented do not justify that risk."

The IACP Model Policy further provides that "Officers shall be aware of the general concerns raised when an ECW is used on a member of a sensitive population group.

Officers are not prohibited from using an ECW on such persons, but use is limited to those exceptional circumstances where the potential benefit of using the device (i.e., injury reduction) reasonably outweighs the risks and concerns."

Additional warnings are contained in the Instructor and User Liability Release and Covenant Not to Sue, which every officer must sign before participating in Taser Certification training. This document provides:

"Taser-induced strong muscle contractions usually render a subject temporarily unable to control her or his psychomotor movements. This may result in secondary injuries such as those due to falls. This loss of control, or inability to catch oneself, can in special circumstances increase the risk(s) of serious injury or death. **Persons who are physically infirm or pregnant are among those who may be at a higher risk.** Also, persons who could fall on sharp object (such as persons holding a knife or other edged weapon) or suffer impact injuries to their head or other sensitive areas in a fall could also be at higher risk. Other persons at higher risk includes those located on elevated or unstable platforms (e.g., trees, roofs, ladders, ledges, cranes, loading docks), operating a vehicle or machinery, or those who are running. Persons located in water may drown if their ability to move…"

Part of the reason proper Taser International Certified Training is so important is that students volunteer to be Tasered for 5 seconds must follow a certain protocol. This protocol reinforces the risk involved when they Taser a person in the field.

The instructors have mats on the floor and a participant walks up onto the mats. Two other students stand on each side of that participant who is going to be Tasered. These two people grab a hold of one arm each. When the subject is Tasered, they lower that person to the mat, to avoid an injury to the participants. When they are Tasered they will normally experience Neuro-Muscular Incapacitation (NMI). It is explained to the participants how they might injure themselves, if they were not lowered to the mat. When NMI occurs the subject's muscles will lock up and they fall to the ground.

Officer Johnson had used his Taser on other individuals, and knows firsthand they will fall. Further, he has been Tasered himself and went to the ground, the only reason he wasn't hurt is because he had two spotters who assisted him to the ground.

The documents cited above establish standard practices for police departments in use and deployment of Taser devices. These warnings, in addition to common sense and practical experience, all work to establish that Taser use against an elderly man

suffering from Alzheimer' is excessive force in violation of accepted police practices.

## Right to update

The opinions contained in this report are based on the information and documents provided to date. I reserve the right to modify these opinions and conclusions, in the event that new or different information is provided in the future.

## Exhibits

I may wish to testify using the training materials from Taser International and the model policies from the IACP which have been cited in this report.

## Compensation

My fee is $250 per hour for review, and $2,000 for a half day of deposition or trial testimony and $2,500 for a full day of deposition or trial testimony.

## Prior Testimony

- San Bernardino County Superior Court, San Bernardino, CA. Case # FSB049737 State of California vs Hasani Fields.

- United States Federal Court, Southern District of California, San Diego, CA Case # ECU04252. Cesar Cervantes vs Calexico (CA) Police Department.

- Santa Barbara County Superior Court, Santa Barbara, CA. Case # 1294128 State of California vs Rebecca Garcia.

- San Bernardino County Superior Court, Joshua Tree, CA. Case # MCVMS06315 State of California vs Daniel Rucker.

- San Diego County Superior East County, San Diego, CA. Case # SCE283936 State of California vs Keith Hill.

- State of South Dakota vs McAlexander.

- Los Angeles County Superior Court, Los Angeles, CA Case # SA067026
  State of California vs Jeff Ott.

- Los Angeles Superior Court, Los Angeles, CA. Case #BA339453
  State of California vs Juan Villatoro.

- Long Beach Superior Court, Long Beach, CA. Case # OLG024571
  State of California vs Baljinder Dhillion.

- Fresno Superior Court Case # M10918859.
  State of California VS Juan Montoya

- Los Angeles County Superior Court, Los Angeles, CA. Case #09CO4972

- Los Angeles Superior Court Torrance California, Case number YA077857.

- Riverside County Superior County, Riverside, CA. Case # RIF154612
  State of California vs Dennis Tokarev.

- Los Angeles Superior Court, Northwest Division, Los Angeles, CA.
  Case # IC083597.

- San Bernardino Superior Court, Joshua Tree, CA. Case #FMB 800589 & 900212
  State of California vs Gregory Murphy.

- United States Federal Court, Western District, State of Louisiana.
  Latrina Thomas VS City of Winfield et al.

- Riverside County Superior Court, Lake Elsinore, CA. Case # SWF1101976
  State of California vs Sean Springfield.

- Los Angeles County Superior Court, Los Angeles, CA. Case # BA390068
  State of California vs Andrew Contreras.

- Los Angeles County Superior Court, Lancaster, CA. Case # MA052170-01
  State of California vs Jovany Rivera.

- Los Angeles County Superior Court. Long Beach, CA. Case # NA080541
  State of California vs Stanley Park.

- Superior Court of Los Angeles County, Los Angeles, CA. Case # 2LG0550. State of California vs Jonathan Hernandez.

- Superior Court of Los Angeles County, Los Angeles, CA Case # 2LG02822. State of California vs Brook DeFord.

- San Bernardino County Superior Court, Rancho Cucamonga, CA. Case # FWV1101144. State of California vs Jose Carlos DeAlba.

- United States Federal Court, Western District, State of Louisiana. Latrina Thomas VS City of Winfield et al.

- United States Federal Court, Western District, State of Louisiana. Ricks V City of Alexandria et al, Civil Docket # 1:12-cv-0349

## Publications

Larry Smith. *Tasers: What do you know?*, PI Magazine (June, 2009).


*Larry A. Smith*        12-16-13

Larry Smith                    Date

Expert Witness Larry A. Smith,
950 Beaumont Ave. # 3210
Beaumont, CA 92223-3210
951-769-4423 Office
1-314-453-3445

Larry Smith has over 30 years of professional Law Enforcement and Private Investigations experience which includes being a Patrol Sergeant with about 30 employees to supervise. Larry has more than 15 years in training Law Enforcement personnel. Larry received his Lifetime Vocational Teaching Credential in the State of California. He has trained personnel on local, state, and national level.

Larry is unique from other Experts in this field because he has survived three critical incidents during his 30 year career including getting shot in the line of duty. Larry has continued working in the education and training of Law Enforcement personnel. He has firsthand knowledge in this area.

The following is a list of all of Larry's employment, accreditations and accommodations that show that Larry has the expertise that makes him an Expert Witness.


## Employment

UEI College - Criminal Justice Instructor
San Bernardino, CA
February 2010 to October 2012 (2.5 yrs)

San Bernardino County (CA) Welfare Fraud Investigator- Police Investigator
San Bernardino, CA
(Also did in-house training)
December 1993 to May 2007 (13.5 years)

San Bernardino County (CA) Sheriff's Academy - Training Specialist
San Bernardino, CA
October 1992 to October 1996 (4 Years)

Fontana (CA) Police Department - Police Officer & Sergeant
Fontana, CA
May 1981 to January 1993 (12.75 years)
  • Court Liaison Officer / School Resource Officer / Field Training Officer / Sergeant of FTO Program / Reserve Police Officer Coordinator/ Police Explorer Advisor & Trainer

  • Swat Team – Scout / Observer / Entry Team / Team Leader / Team Sergeant / Team Sergeant in charge of training.

Ontario-Montclair (CA) School District Police Department - Police Officer
Ontario, CA
August 1980 to June 1981 (9 mos)
- Assisted in setting up Policy and Procedures for the School Police Department and worked investigations for school related crimes.

Ontario (CA) Police Department - Police Officer
Ontario, CA
1977 to 1980 (3 yrs)
- I worked Patrol and traffic Investigations.

Los Angeles County (CA) Sheriff's Department - Deputy Sheriff
Los Angeles, CA
1974 to 1977 (3 yrs)

## Teaching Experience

San Bernardino County (CA) Sheriff's Department Academy
Evaluated recruits during scenario based training
1982 thru 1991 (9 yrs)

San Bernardino County (CA) Sheriff's Department Academy Guest Tactical Officer
August to February 1988 (90th Session) (6 mos)

San Bernardino County (CA) Sheriff's Department Academy Training Specialist
1992 to 1996 (4 yrs)

San Bernardino Valley College, Extended Police Academy
San Bernardino, CA
1992 to 1994 (2 yrs)

Taught Self Defense Classes for Civilians throughout California, 1995 - 2007

UEI College, San Bernardino CA – Criminal Justice Instructor
February 2010 to October 2012 (2.5 yrs)

## Education and Certificates

- California Peace Officers Standards and Training (P.O.S.T.) Certificates
  - Basic P.O.S.T. Certificate - 1976

- Intermediate P.O.S.T. Certificate - 1983
- Advanced P.O.S.T Certificate - 1987

- California State University San Bernardino, San Bernardino, CA
  Lifetime Vocational Instructor - Credential #33SMI 001 - June 1990

- Southern Illinois University, Carbondale, IL - Vocational Education - 1994 to 1996
  Southern Illinois University published a book that I wrote "Self Defense for Men &
  Women". I taught these types of classes for the next 10 years on local, state,
  national and international levels.

- Certified as a Taser International Instructor on M26 and X26 - 2/.2008

- Conference on Institute for the Prevention of In-Custody Deaths – October 2008

- Instructor course in Recognition, Prevention and Management of Excited
  Delirium and sudden In-Custody Deaths - May 2010

- San Bernardino Valley Community College - Coordinator/ Instructor for Extended
  Law Enforcement Academy for CA P.O.S.T. Certified for students to obtain a
  Basic CA P.O.S.T. Graduation Certificate - August 1993 to August 1995.

- Weaponless Defense Instructors Courses
  - Weaponless Defense Instructors Course - October 1991
  - Recertification - Weaponless Defense Instructors Course - March 1996
  - Recertification - Weaponless Defense Instructors Course - June 2005

- Los Angeles Police Department Ground Fighting course 40 hours

- Firearms Instructor Courses:
  Firearms Instructor from 1993 to 2007
  - FBI Firearms Instructor Certificate - Ventura County - June 1993
  - San Bernardino County (CA) Sheriff's Department Firearms Instructors
    Course - 1996
  - San Bernardino County (CA) Sheriff's Department Firearms Instructors
    Course - 2002

- San Bernardino County (CA) Sheriff's Department
  ASP Baton Instructor Course - March 1994

- San Bernardino County (CA) Sheriff's Department Instructors' Course for Riot
  Control – 1992

**Education and Certificates** (continued)

- Taser International Instructor Since 2008  Cert.#.082295704142871346C
  - Taser update (via computer course) Written test scored 100% - 2010

- Academy Recruit Training Officer Course Certificate
  CA P.O.S.T. Certified class – February 1988

- San Bernardino County (CA) Sheriff's Department Officer Survival
  November 1981

- Los Angeles County (CA) Sheriff's Department  Special Weapons and Tactics
  Certificate - 40 hours – November 1987

- San Bernardino County (CA) Sheriff's Department Supervision Certificate
  80 hours – October.1989

- Advanced Tactical Communication Course (Verbal Judo) – October 1991

- Advanced Tactical Communication Instructor Course (Verbal Judo) January 1994

- Chemical Agents Instructors Course Pepper Spray and Mace – August 1993

- Las Vegas (NV) Metro Police Department - Street Survival Course - June1997

- San Bernardino County (CA) Sheriff's Department - Plainclothes Officer Safety &
  Field Tactics -  April 1998

- Workplace Violence – November 1999

- Certificate for Conducting Fraud Examinations - April 2000

- Comprehensive Search & Seizure Class – December 2001

- Aviation Security Class – March 2002.

- Interview & Interrogation Class – June 2002

- San Bernardino County (CA) Sheriff's Department - Racial Profiling - March 2004

- Uncovering Reasonable Doubt Seminar -  September 2005

- Las Vegas (NV) Metro Police Department - Rolling Surveillance – March 2006

- National Use Of Force Conference - Presented by the Performance Institute
  November 2007

## Awards

- Nominated San Bernardino County (CA) Sheriff's Civilian "Employee of the Year" for 1995.
  As a Training Specialist at San Bernardino County Sheriff's Academy. I was responsible for training approximately 4000 employees every quarter in Legal Updates, Verbal Skills, Baton, Handcuffing, Chemical Agents, and Firearms.

## Associations

- Expert Witness Qualified
  - San Bernardino County (CA) Superior Court- Self Defense
  - San Diego County (CA) Superior Court- Taser Usage
  - South Dakota (State of) - Taser Usage
  - Los Angeles County Superior Court - Police Excessive Use of Force
  - Long Beach Branch of L.A. Co. Superior Court – Police Excessive Use of Force
  - Los Angeles County (CA) Superior Court - Police Use of Force & Policy and Procedures.
- Professional Investigators of California Association (PICA) since 2004
  - President - 2008
  - District Director and Board Member - 2006
- Criminal Investigators with San Bernardino County Court since 2007
- International Law Enforcement Trainers Association since 2007
- Board Certified Criminal Defense Investigators since 2008
- Los Angeles County Criminal Defense Investigators Association since 2009
- Member of California Association of Licensed Investigators (CALI) since 2009