

FILED
JAN 3 0 2014
Clerk, U.S District Court
District Of Montana
Missoula

| | |
|---|---|
| TAMARA DOWNEN, Individually and as Personal Representative for the ESTATE OF STANLEY L. DOWNEN, Deceased,<br><br>Plaintiff,<br><br>vs.<br><br>MONTANA VETERANS' HOME; STATE OF MONTANA DEPARTMENT OF PUBLIC HEALTH AND HUMAN SERVICES; CITY OF COLUMBIA FALLS; MIKE JOHNSON and DAVID G. PERRY,<br><br>Defendants. | CV 13–121–M–DWM<br><br>ORDER |

This matter is before the Court on motions in limine filed by City Defendants and State Defendants concerning reports, testimony, and opinions of Dr. Walter Peschel, Will Cordes, and Larry Smith (Docs. 38 and 43) and motions in limine filed by State Defendants concerning evidence or testimony related to other incidents of alleged misconduct or complaints at Montana Veterans' Home, the expert testimony of Paul Coats, N.P., and opinions from Stanley Downen's other treating providers as disclosed on pages 50-52 of Plaintiff's expert

1

disclosure. (Doc. 43.) Both motions are granted in part and denied in part.

A *Daubert* hearing was held on January 29, 2014 to determine the relevancy and reliability of the proposed expert testimony in this matter. *Estate of Henry Barabin v. AstenJohnson, Inc.*, Slip Copy, No. 10-36142, at *11 (9th Cir. Jan. 15, 2014). Parties presented testimony and argument regarding the proposed expert testimony of Paul Coats, Walter Peschel, Larry Smith, and William Cordes. In addition to the reasons stated on the record, the following reasoning is the basis of this order.

## I. Paul Coats, N.P.

Nurse Coats presented a methodology of diagnosing and treating Alzheimer's patients that is reliable and relevant based on his personal treatment of Downen. However, Plaintiff did not file an expert report on Nurse Coats' proposed expert testimony. In the absence of an expert report, Nurse Coats' testimony is limited to his opinions based on care, treatment, and prognosis. *St. Vincent v. Werner Enters., Inc.*, 267 F.R.D. 344 (D. Mont. 2010) (citing Fed. R. Civ. P. 26(a)(2)(B)); *see also* Fed. R. Civ. P. 26(a)(2)(C). This decision is further supported by Nurse Coats' testimony that any opinions he may have that go beyond his treatment of Downen are based on common sense, not expertise.

II. **Dr. Walter Peschel**

   A. **Personal Experience**

   Plaintiff failed to show Dr. Peschel's opinions as to his own experience of being tased are either relevant or reliable in this case. Dr. Peschel will not be allowed to testify to his personal experience of being tased. *See* Fed. R. Evid. 402, 403.

   B. **Electroporation**

   Dr. Peschel's opinions as to electroporation are not reliable. The testimony is not relevant in that Dr. Peschel was unable to say that electroporation would likely have occurred in this situation. Instead, he stated during the *Daubert* hearing that it was not his opinion that electroporation specifically hastened Downen's demise but that more generally something did.

   As to the question of reliability, the Court is unable to discern what methodology Dr. Peschel used to reach his opinions regarding electroporation. The only statement Dr. Peschel made on this point was to say that he "would be surprised if [the electrical current]" did not reach Downen's brain as a result of being tased. In light of no discernable methodology and the testimony of Mark Kroll, Dr. Peschel is not allowed to testify regarding his opinions on electroporation and the role he alleges it played in hastening Downen's death.

## C. Trajectory of Downen's Decline

Dr. Peschel has demonstrated relevant and reliable expert opinions regarding his opinion as to the clinical diagnosis of Downen and his medical course of rapid declination. The methodology described by Dr. Peschel in reaching this diagnosis is reflected by the methodology discussed by Nurse Coats and it is also one that is widely adhered to by any physician who diagnoses and treats patients. He described reviewing a patient's medical history, establishing a baseline for what is "normal" of that patient, determining what factor(s) has changed, and differentially relates this information to the medical trajectory of that patient's health. This methodology is supported by the peer-reviewed literature cited by Plaintiff, as well as Dr. Peschel's 35 years as a general practitioner.

According to Dr. Peschel, the injuries sustained by Downen during the tasing incident hastened his death due to his body's inability to repair itself. Defendants contend this proposed testimony raises a disclosure issue, as Dr. Peschel's expert report focuses on electroporation. They are only partially correct. Although the report discusses electroporation in some detail, Section 2 of the report, titled "The progressive physiological implications of Alzheimer's disease," outlines the proffered opinion without reference to electroporation. Dr. Peschel's opinions as to his general diagnosis of Downen as outlined in Section 2 of the

report are both relevant and reliable. Therefore, Dr. Peschel may offer his opinions as to this portion of his report. However, as a caution Dr. Peschel is limited to what has been properly disclosed, that is, what is in the report, not literally but fairly, other than those opinions excluded by this order. Many of the issues raised by Defendants at the *Daubert* hearing, such as the possibility that pneumonia hastened Downen's death, go to the weight of Dr. Peschel's testimony and are matters for cross examination.

Furthermore, pursuant to Plaintiff's stipulation, Dr. Peschel will not testify to his opinions regarding the propriety of Downen's placement at Montana Veterans' Home.

### D. De-escalation

Pursuant to Plaintiff's stipulation, Dr. Peschel will not testify to the de-escalation techniques used by Montana Veterans' Home. *See also* Mont. Code Ann. § 26-2-601. To the extent Dr. Peschel would testify to his opinions as to the de-escalation techniques used by the officers from the Columbia Falls Police Department, Plaintiff has failed to establish these opinions are reliable.

### III. Larry Smith

According to Mr. Smith's testimony, accepted methodologies exist for reviewing the amount of force applied in a given situation, the use of a taser, and

the necessary policies that should be in place regarding taser use. Mr. Smith's application of these methodologies is reliable based on his 30 years experience in law enforcement, extensive training in the use of tasers, experience training others on the use of tasers, and knowledge of use of force and taser policies and guidelines. Mr. Smith has reviewed the facts of this case and his opinions are relevant. Issues Defendants may have with the application of these methodologies or Mr. Smith's conclusions based therein are properly addressed on cross examination at trial.

Plaintiff has stipulated, however, that Mr. Smith will not testify regarding his opinions as to the actions of the long-term care facility.

### IV. William Cordes

Similar to Mr. Smith, Mr. Cordes testified to the existence of methodologies that may be applied to the use of force in a given situation and the standard taser policies used by law enforcement. He specifically discussed the force continuum used by law enforcement and his familiarity with that continuum as it applies to the use of force in the field currently. Mr. Cordes has experience with taser use and has previously been responsible for the training of other officers in such use. He has reviewed all the pertinent materials as they relate to this case, including depositions and policies of the Columbia Falls Police Department. Therefore, Mr.

Cordes' opinions as they relate to the use of force and the alleged lack of taser policies and training are relevant and reliable. Defendants will have the chance to cross examine Mr. Cordes regarding his application of these methodologies and his conclusions at trial.

Mr. Cordes will not testify, however, to his opinions regarding the preservation/spoliation of evidence in this matter. Plaintiff has failed to demonstrate that these opinions are either relevant or reliable to an issue in the case. (*See* Order on Motion for Spoliation Sanctions, Doc. 47.)

Further, pursuant to Plaintiff's stipulation, Mr. Cordes will not give his opinion as it relates to the actions of the long-term care facility.

IT IS SO ORDERED.

IT IS FURTHER ORDERED that State Defendant's motion in limine to limit the testimony of Downen's other treating physicians as disclosed on pages 50-52 of Plaintiff's expert disclosure is GRANTED IN PART and DENIED IN PART. It is GRANTED to the extent that these treating physicians will not be allowed to testify beyond their opinions based on care, treatment, and prognosis, *St. Vincent v. Werner Enters., Inc.*, 267 F.R.D. 344 (D. Mont. 2010) (citing Fed. R. Civ. P. 26(a)(2)(B)), and DENIED in all other respects.

IT IS FURTHER ORDERED that State Defendant's motion in limine to

exclude evidence or testimony regarding prior misconduct by Montana Veterans' Home is GRANTED IN PART and the Court RESERVES RULING IN PART. It is GRANTED to the extent that evidence or testimony regarding the subsequent accidents are excluded. The Court reserves ruling on whether the four prior incidents may be admitted for a proper purpose. The objection may be renewed at trial.

Dated this 20th day of January, 2014.

Donald W. Molloy, District Judge
United States District Court